NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANGEL L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.L., *Appellees*.

No. 1 CA-JV 22-0097
FILED 9-15-2022

Appeal from the Superior Court in Maricopa County
No. JD32132
The Honorable David O. Cunanan, Judge, *Retired*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**F U R U Y A**, Judge:

¶1        Angel L. ("Father") appeals the juvenile court's order terminating his parental rights to his minor child (born in 2020).[1] Father challenges the court's order finding statutory grounds for termination as to his child ("Child"), that the Department of Child Safety ("DCS") made reasonable efforts to provide Father reunification services, and that termination of his parental rights was in Child's best interests. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Father and Mother are the biological parents of Child. In July 2020, DCS became involved upon learning Child was born substance exposed to fentanyl. Mother admitted to using fentanyl consistently for a year, though Father claimed he knew nothing about such use and denied using any substances himself except for marijuana. Mother and Father agreed to submit to uranalysis ("UA") and hair follicle testing on July 31 but did not do so until August 4. Father tested positive for marijuana in his UA, and his hair follicle tested positive for marijuana and cocaine. Mother tested positive for fentanyl. Child was temporarily placed in a licensed foster care home.

¶3        In November 2020, Child was adjudicated dependent as to Father and Mother, and the juvenile court approved a case plan of family reunification, which was later changed to termination and adoption. DCS offered Father various reunification services, including a psychological evaluation, parent aide services, visitation, random UA testing, substance abuse treatment, and transportation. Father inconsistently engaged with these services. Although he was asked to begin random UA testing on July 31, Father did not do so until August 14. From October 2021 to March

---

[1]        The parental rights of Child's mother, Extacy T., were also terminated, and she is not a party to this appeal.

2022—the month of the termination hearing—Father completed 10 out of 24 UA tests.

¶4            In addition to Father failing to drug-test for "three and a half months" before the termination hearing, he did not complete the recommended maintenance recovery program from the substance abuse treatment program at Terros. He was aware that his participation in such "recommended services" was a condition of Child's return to Father. As a result, DCS moved to terminate Father's parental rights pursuant to the chronic substance abuse and fifteen-months' time in out-of-home placement grounds. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(c).

¶5            At the March 2022 termination trial, the juvenile court found Father "voluntarily absented [himself] from the proceedings by not appearing" and thus waived his right to contest such proceedings. The DCS case manager testified that Child was currently residing with an adoptive placement and was otherwise adoptable. The case manager further opined that terminating Father's parental rights would benefit Child by allowing him to have permanency in a stable home.

¶6            The court terminated Father's parental rights, finding clear and convincing evidence supported termination and finding by a preponderance of the evidence that termination would be in Child's best interests. Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

**DISCUSSION**

¶7            To terminate a parent's rights, the juvenile court must find clear and convincing evidence that supports at least one statutory ground for termination. A.R.S. § 8-533(B); Ariz. R. P. Juv. Ct. 353(C).[2] The court must also separately find by a preponderance of the evidence that termination is in the child's best interests. Ariz. R. P. Juv. Ct. 353(C). We "will affirm the juvenile court's termination order absent an abuse of discretion or unless the court's findings of fact were clearly erroneous." *E.R. v. DCS*, 237 Ariz. 56, 58, ¶ 9 (App. 2015). A finding is clearly erroneous if no reasonable evidence supports it. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). We will not reweigh the evidence on appeal because the juvenile court, as a direct observer of the parties' credibility, is "in the best

---

[2]            Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

position to weigh the evidence." *Id.* Indeed, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549 ¶ 7 (App. 2010).

¶8 Parental rights may be terminated if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3).

¶9 Father argues the court abused its discretion by terminating his parental rights based on the substance abuse ground because he successfully completed substance abuse treatment and his UA tests were positive for marijuana only (and he had a medical marijuana card). Father's argument ignores other evidence of his drug use, including positive hair follicle test results. It also fails to acknowledge the court's key finding, that "Father [was] inconsistent with his testing," and thus rendered DCS "unable to fully assess Father's sobriety," which Father was required to demonstrate to show his ability to "maintain a safe, stable, sober, and sanitary home for himself and his child." We believe the court's finding is supported by reasonable evidence in the record and reflective of the directive that "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S. v. DCS*, 240 Ariz. 282, 287 ¶ 17 (App. 2016). Thus, the court's conclusion to terminate on substance abuse grounds was not in error.[3]

¶10 Citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 37 (App. 1999), Father contends the court abused its discretion in finding DCS made reasonable efforts to provide him with reunification services because DCS neglected to offer him services recommended by the psychologist who conducted his psychological evaluation. But the treating psychologist did not testify at trial. Nor did Father offer any evidence— such as the psychological evaluation—that would have proved these recommendations or DCS' failure to honor those recommended services. Therefore, in the absence of evidence on the matter, we cannot confirm the existence or nature of the purported recommendation for services or assess DCS' alleged failure to provide them. Where the record is so deficient,

---

[3] Because we affirm the court's finding that clear and convincing evidence supports the termination order based upon the substance abuse ground, we do not address Father's challenges to the court's findings on the fifteen-months' time in out-of-home placement ground. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).

Father's argument cannot prevail. *See Michaelson v. Garr*, 234 Ariz. 542, 546 ¶ 13 (App. 2014) (explaining it is an appellant's responsibility to ensure the record contains material to which he takes exception).

¶11 And contrary to his argument that DCS failed to make reasonable efforts to provide him with reunification services, the record reflects Father was offered various reunification services, in which he inconsistently participated. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (stating DCS fulfills its statutory mandate to make reasonable efforts to provide reunification services where it affords the parent "the time and opportunity" to participate in programs designed to help become an effective parent, and DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers"). Further, DCS' case manager discussed the psychological evaluation at trial and confirmed that DCS asked Father to self-refer for individual and couples counseling based on the same. The case manager provided Father with "a list of places" that would accept his insurance. The case manager told Father he was required to participate in such counseling "on his own," but further testified that when Father disclosed he had encountered problems with his insurance, the case manager sent him to Terros. Father also informed the case manager that he "got it all worked out" and "was able to get a setup with Terros." But Father ceased communications with DCS in December 2021 and never provided documentation that he completed counseling. On this record, the juvenile court did not abuse its discretion in finding DCS made reasonable efforts to provide Father with reunification services.

¶12 Finally, Father challenges the court's best-interests finding. When a child benefits from termination or is harmed by continuing the parent-child relationship, termination is in that child's best interests. *Alma S. v. DCS*, 245 Ariz. 146, 150 ¶ 13 (2018). A child may benefit if a current adoptive plan exists, *see Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990), or if DCS can show the child is adoptable, *Alma S.*, 245 Ariz. at 150–51 ¶¶ 13–14. The court may also consider whether the existing placement meets the child's needs and adoption is otherwise legally possible and likely. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016). Ultimately, the court's primary concern during the best-interests inquiry is "protect[ing] a child's interest in stability and security." *Id.* at 4 ¶ 15 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286 ¶ 34 (2005)).

¶13 Here, the court found termination would benefit Child, echoing the case manager's testimony that "it would further the plan of adoption, which would provide [Child] with permanency and stability."

The court also found that Child was residing in an adoptive placement that met all of his needs and was considered adoptable. Another placement could be located should his current placement be unable to adopt him. Father cites no evidence to dispute the case manager's testimony. Instead, he criticizes the weight given this testimony. But the court's findings are supported by reasonable evidence in the record, and we will not reweigh that evidence. *Mary Lou C.*, 207 Ariz. at 47 ¶ 8. The court did not err in finding that termination was in Child's best interests.

**CONCLUSION**

¶14      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA